FILED

07/31/2017

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 1, 2017

IN RE B.B., ET AL.

Appeal from the Circuit Court for Montgomery County
No. CC-15-CV-2518       Ross H. Hicks, Judge

_____

No. M2016-01642-COA-R3-JV

_____

In this dependency and neglect case, A.L.B. (father) reported to DCS that K.J.B. (mother) had physically abused their daughter, B.E.B. (child 1). After investigating the alleged abuse, DCS filed a petition to declare child 1 and her brother, B.A.B. (child 2) (collectively the children), dependent and neglected in mother's care. The Montgomery County Juvenile Court adjudicated the children dependent and neglected. Mother appealed to the trial court. That court found clear and convincing evidence of abuse. Accordingly, the court adjudicated the children dependent and neglected. Mother appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which W. NEAL MCBRAYER and ARNOLD B. GOLDIN, JJ., joined.

B. Nathan Hunt and Zachary L. Talbot, Clarksville, Tennessee, for the appellant, K.J.B.

Herbert H. Slatery III, Attorney General and Reporter, and Kathryn A. Baker, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

**OPINION**

**I.**

The parents in this case were going through a divorce. While the divorce was ongoing, they were voluntarily splitting parenting time equally. The children were in

mother's care from July 27, 2015 until July 29, 2015 when they returned to father. Upon returning to father, child 1 had marks and bruising on the side of her face. She informed father that mother had slapped her multiple times across the face.

On July 31, 2015, father reported mother's physical abuse of child 1 to DCS. That same day, Melanie Campbell, a DCS investigator, responded to the referral. Ms. Campbell first spoke with father. Her purpose was to obtain some background information. Father reported that mother's physical treatment of child 1 had escalated over the previous two years. He also reported that mother called the child names and that the names have gotten progressively worse. Ms. Campbell then interviewed child 1 at daycare. Child 1 reported that mother slapped her across the face one to two times per day. In addition to this behavior, child 1 also stated that mother calls her derogatory names. During the interview, Ms. Campbell observed that child 1 had a mark below her left eye and bruising on the right side of her face. Child 1 reported that the bruising had been caused by mother slapping her multiple times. At daycare, Ms. Campbell attempted to interview child 2 who was three years old at the time. She could not obtain any information from him because he kept asking for father. Ms. Campbell attempted to interview mother, but she was uncooperative and verbally aggressive. During the course of her investigation, Ms. Campbell also spoke with mother's sister who reported concerns about mother's treatment of child 1. She stated that over the past two years, mother had gotten more verbally and physically aggressive with child 1.

Based upon its investigation, DCS created an "immediate protection agreement" to protect the children from the risk of harm. This agreement placed the children with father and allowed mother to have supervised visitation with the children but no overnight visits. As part of the immediate protection agreement, mother was required to schedule a clinical assessment with a parenting component within ten business days and complete parenting classes.

On August 5, 2015, DCS filed a petition for dependency and neglect. On July 11, 2016, the trial court heard the case. In its ruling, the court noted that, although mother had a clinical assessment and had taken a parenting class, she had done little else to be reunited with the children. The trial court found clear and convincing evidence of abuse and neglect with respect to child 1. The court found that, while there was not specific proof of abuse to child 2, "the fact that there is abuse of one child justifies the department in treating both children as being threatened by the mother's abuse and neglect." Accordingly, the court adjudicated the children dependent and neglected in mother's care. The court ordered that the immediate protection agreement remain in effect. Mother appeals.

## II.

On appeal, mother raises the following issue taken verbatim from her brief:

Whether the record supports the trial court's finding by clear and convincing evidence that the minor child [1] was dependent and neglected.

(Paragraph numbering in original omitted.)

### III.

With respect to dependency and neglect proceedings, we have observed the following:

Under Tennessee Code Annotated § 37-1-129, dependency and neglect must be established by clear and convincing evidence. . . . "Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." The evidence should produce a firm belief or conviction as to the truth of the allegations sought to be established. "In contrast to the preponderance of the evidence standard, clear and convincing evidence should demonstrate that the truth of the facts asserted is 'highly probable' as opposed to merely 'more probable' than not."

*In re S.J.*, 387 S.W.3d 576, 587 (Tenn. Ct. App. 2012) (internal citations omitted). We have further elaborated the standard of review as follows:

Whether the ultimate issue[] of dependency and neglect . . . ha[s] been established by clear and convincing evidence [is a] question[] of law, which we review *de novo* with no presumption of correctness. To the extent the trial court made findings of fact in support of the ultimate issues, we review the factual findings pursuant to Tenn. R. App. P. 13(d), *de novo* with a presumption of correctness unless the evidence preponderates otherwise. However, the trial court's conclusions of law concerning the ultimate issues are reviewed *de novo* without a presumption of correctness.

*Cornelius v. Dep't of Children's Servs.*, 314 S.W.3d 902, 907 (Tenn. Ct. App. 2009). In summary, "this Court will review the trial court's specific findings of fact in support of its ultimate conclusions *de novo*, pursuant to Tenn. R. App. P. 13(d), with a presumption of correctness; however, we will review . . . conclusions of law, *i.e.*, that . . . the children

are dependent and neglected, *de novo* with no presumption of correctness." ***Id.***

## IV.

## A.

As relevant to this case, Tenn. Code Ann. § 37-1-102(b)(13)[1] defines a "dependent and neglected child" as follows:

> (F) Who is in such condition of want or suffering or is under such improper guardianship or control as to injure or endanger the morals or health of such child or others;
>
> (G) Who is suffering from abuse or neglect[.]

Abuse exists when a child "is suffering from, has sustained, or may be in immediate danger of suffering from or sustaining a wound, injury, disability or physical or mental condition caused by brutality, neglect or other actions or inactions of a parent, relative, guardian or caretaker[.]" Tenn. Code Ann. § 37-1-102(b)(1).

This Court has stated the following with respect to a situation where a parent has more than one child:

> [E]ven if the record contained zero evidence on [the parent's] care of [other children], it would not matter. The statutory definition of a dependent and neglected child expressly addresses such circumstances; the definition includes any child who is "under such improper guardianship or control as to . . . endanger the . . . health of such child or others." Given the abuse and neglect suffered by [one child], it is clear that the other children under [the parent's] care are "under such improper guardianship . . . as to . . . endanger the . . . health of such child . . . ." It would be anomalous indeed if DCS, after finding one child in a household suffered abuse and neglect, was powerless under the dependency and neglect statutes to remove other children in the household.

***In re S.J.***, 387 S.W.3d 576, 589-90 (Tenn. Ct. App. 2012) (internal citation omitted).

---

[1] On July 1, 2016, Tenn. Code Ann. § 37-1-102 (b) was amended, causing the definition of "dependent and neglected child" to be renumbered from subsection (12) to (13).

**B.**

The trial court made the following findings in holding that clear and convincing evidence supports a finding that the children are dependent and neglected:

> The proof before the Court today is the statements made by the child . . . that were reported to the DCS case worker, Melanie Campbell, the testimony of [father] who testified that the same statements of abuse were made to him, and the report to the Court by the Guardian Ad Litem who confirmed that [child 1] also reported the same statements of abuse to her.
>
> The photographs that were submitted into evidence support the testimony before the Court. These photographs clearly depict some redness, and a mark just above the left eye that extends to the eyebrow area on the child's face. The testimony was that these photographs were taken several days after the incident occurred and they still depict the injuries to the child.
>
> The DCS petition alleges that [mother] slapped the child repeatedly, causing injuries to [child 1]. The DCS petition also alleges that [mother] verbally abused [child 1] by calling her derogatory names.
>
> Even though the injuries to [child 1] are not severe, the Court finds that the child . . . suffered physical and verbal abuse, including psychological abuse from derogatory name calling, at the hands of her mother . . . .
>
> The Court finds by clear and convincing evidence that the State has established that the allegations in the petition are true and that there was abuse and neglect pursuant to T.C.A. § 37-1-102(b)(12) on the part of [mother] as to [child 1] in this case.
>
> That there is no proof before the Court that the minor child, [B.A.B], suffered any physical, psychological, or verbal abuse or neglect. However, the Court finds that the abuse of one child that is a sibling of and residing in the same home as a child that has been physically and psychologically abused, justifies DCS involvement with both children due to the

> substantial risk of harm of abuse or neglect that [mother] could pose to both children.

Based on these findings, the court found that the children were dependent and neglected in mother's care. The court ordered that the immediate protection agreement remain in effect as an order of the court.

### C.

#### i.

Mother argues that DCS failed to prove dependency and neglect by clear and convincing evidence. In her brief, mother's argument focuses on the testimony of the witnesses at trial. She asserts that DCS's witnesses were not credible. With regard to Ms. Campbell's testimony, mother argues that her testimony "was not sufficiently credible to produce a firm belief in the truth of the abuse allegations and it did not eliminate any real doubt about the correct conclusion to be drawn." Mother also attacks father's testimony. She claims that his testimony lacked credibility, was confusing, and failed to establish a high probability of dependency and neglect.

In addition to attacking the testimony of DCS's witnesses, mother asserts that two of her co-workers who are licensed medical professionals "fully rebutted the allegations of abuse." These witnesses testified that the day after the alleged abuse, they did not notice signs of physical injury to the children and that child 1 did not appear to be wearing makeup. Mother claims that the observations of her witnesses "refute[] DCS and [father's] allegation that [she] slapped or otherwise abused [child 1] on the night of Monday, July 27, 2015."

Mother concludes that "the trial court had before it competing witnesses, and the testimony provided by those witnesses could not have rationally 'produce[d] in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established.'" She claims that DCS has not met its burden of proof. We disagree.

#### ii.

Rather than showing exactly how the evidence preponderates against the trial court's findings, mother merely rehashes the trial testimony. In doing so, she focuses on *mother's* assessment of the credibility of the witnesses. Mother's focus on the testimony of the trial witnesses fails to establish that the evidence preponderates against the trial court's findings. In reviewing this record, however, we must focus on the *trial court's* assessment of the credibility of the witnesses rather than mother's assessment.

With respect to a trial court's assessment of trial testimony, the Supreme Court has

stated the following:

> [A] reviewing court must give "considerable deference" to the trial judge with regard to oral, in-court testimony as it is the trial judge who has viewed the witnesses and heard the testimony. . . . [B]ecause there is no requirement that a trial court make express findings of fact regarding a witness's credibility, the absence of such findings does not alter the applicable standard of review. Indeed, the trial court's findings with respect to credibility and the weight of the evidence . . . generally may be inferred from the manner in which the trial court resolves conflicts in the testimony and decides the case.

*Richards v. Liberty Mut. Ins. Co.*, 70 S.W.3d 729, 733-34 (Tenn. 2002) (internal citations omitted).

In this case, the trial court's order, as previously noted by us, states the following:

> The proof before the Court today is the statements of abuse made by the child . . . that were reported to the DCS case worker, Melanie Campbell, the testimony of [father] who testified that the same statements of abuse were made to him, and the report to the Court by the Guardian Ad Litem who confirmed that [the child] also reported the same statements of abuse to her.
>
> The photographs that were submitted into evidence support the testimony before the Court.

(Paragraph numbering in original omitted.) Clearly, the court weighed the testimony of the witnesses at trial. The trial court specifically found that the photographs support the testimony of DCS's witnesses. While the trial court did not specifically state that it found those witnesses credible, that does not change the outcome of the case. Courts are not required to specifically make credibility determinations. We can infer from the trial court's factual findings that it made credibility determinations adverse to the evidence supporting mother's position in this case. The evidence does not preponderate against the trial court's factual findings, said by the trial court to be based on clear and convincing evidence of dependency and neglect.

The evidence does not preponderate against the trial court's finding, made by clear and convincing evidence, of dependency and neglect. Father and DCS both provided photographs depicting the injuries to child 1's face. These photographs were consistent

with the allegations in this case and the testimony at trial about the incident. Ms. Campbell's investigation supports a finding that mother slapped child 1 multiple times causing her injuries and that she calls her names on a regular basis. The evidence demonstrates that the incident in question was not an isolated event. Father reported that mother's treatment had gotten progressively worse over the years. Mother's sister also reported the same concern to Ms. Campbell. The evidence demonstrates that child 1 had sustained injury at the hands of mother, which constitutes abuse under Tenn. Code Ann. § 37-1-102(b)(1). Furthermore, a child who is suffering from abuse is "dependent and neglected" under Tenn. Code Ann. § 37-1-102(b)(13)(G). We hold, as a matter of law, that the evidence does not preponderate against the trial court's finding that child 1 is dependent and neglected in mother's care.

**D.**

Mother asserts that the trial court "found that DCS had failed to meet its burden of proof by clear and convincing evidence that [child 2] was a dependent and neglected child." This assertion, however, is false. The court did in fact adjudicate child 2 dependent and neglected. While the court found that there is no proof of specific abuse or neglect with respect to child 2, the court found that the abuse of child 1 justifies DCS involvement with child 2. The court found that the abuse of child 1 demonstrates a "substantial risk of harm of abuse or neglect that [mother] could pose to both children." *See* Tenn. Code Ann. § 37-1-102(b)(13)(F). Thus, despite the lack of evidence that child 2 has suffered at the hands of mother, the abuse of child 1 justifies DCS's involvement with child 2. Based upon that finding, the court entered the immediate protection agreement as an order of the court, which also placed child 2 with father. The proof does not preponderate against the trial court's findings made by it based upon clear and convincing evidence.

As previously quoted, a dependent and neglected child includes a child

> [w]ho is in such condition of want or suffering or is under such improper guardianship or control as to injure or endanger the morals or health of such child or others[.]

Tenn. Code Ann. § 37-1-102(b)(13)(F). This Court has previously found that when one child has been abused, the other children in the household may be found to be dependent and neglected. *See In re S.J.*, 387 S.W.3d at 589-90. That is clearly the situation before us. In this case, there is clear and convincing evidence that mother abused child 1 and that the child is dependent and neglected. Mother's treatment of child 1 has gotten progressively worse and poses a risk that child 2 might, in the absence of action by DCS, suffer abuse. Mother's abuse of child 1demonstrates that child 2 is under such improper guardianship so as to "injure or endanger [his] morals or health" and is dependent and neglected under Tenn. Code Ann. § 37-1-102(b)(13)(F). The evidence does not

preponderate against the trial court's finding that child 2 is dependent and neglected in mother's care.

**V.**

The judgment of the trial court is affirmed. The costs on appeal are assessed to the appellant, K.J.B. This case is remanded for enforcement of the trial court's judgment and for collection of costs assessed below.


_____
CHARLES D. SUSANO, JR., JUDGE