IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 18, 2022 Session

## IN RE TRUST OF KATHERINE D. GRAHAM

**Appeal from the Probate Court for Davidson County**
**No. 20P-1787      David Randall Kennedy, Judge**

_____

### No. M2021-00967-COA-R3-CV

_____

Decedent created a trust and named one of the beneficiaries and Appellee, a third-party bank, as co-trustees. The trust beneficiaries petitioned for Appellee's removal and for the substitution of another beneficiary as co-trustee. The petitioners also sought an order directing Appellee to reimburse the trust for fees paid to Appellee as co-trustee. The trial court held that Appellee administered the trust diligently and without any malfeasance, misfeasance, or non-feasance. As such, the trial court implicitly found that Appellee was entitled to its fees. The trial court further found that it would violate a material purpose of the trust to appoint, as co-trustee, another related beneficiary. Ultimately, the trial court declined to remove Appellee and to substitute another beneficiary as co-trustee. Appellant is the only petitioner/beneficiary to appeal. Although we conclude that the trial court erred in its material purpose finding, for reasons discussed below, we affirm the trial court's decision not to remove Appellee as co-trustee. Further, we affirm the trial court's denial of the petitioners' request that Appellee reimburse the trust for its fees. Appellee's motion for appellate attorney's fees is denied.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

John Thomas Ferguson, Chesterfield, Virginia, appellant, *pro se*.

Paul A. Gontarek, Nashville, Tennessee, for the appellee, Truxton Trust Company.

# OPINION

## I. Background

On August 24, 2019, Katherine Dinkins Graham ("Decedent") died testate. Before her death, Decedent executed a Last Will and Testament (the "Will") and a Second Codicil. The Will appointed Appellant John Thomas Ferguson, Decedent's nephew, and Charles G. Cornelius, an attorney, as co-executors of Decedent's Estate. The Will provided for a number of specific bequests before leaving the residuary estate to the Katherine D. Graham Trust (the "Trust"). In pertinent part, the Trust provided for the following: (1) the net income from the Trust would be distributed to Janice Dinkins Ferguson, Decedent's sister, during her lifetime; (2) after Mrs. Ferguson's death, the net income would be paid in equal shares to Janice Ferguson Hadden, Decedent's niece, and Mr. Ferguson;[1] and (3) at the death of Ms. Hadden and Mr. Ferguson, the Trust assets would be distributed to their children, Decedent's grandnieces.[2]

In Item IV A of the Will, Decedent appointed Mrs. Ferguson and Mr. Cornelius as co-trustees of the Trust. Item VII C of the Will provided that, in the event Mrs. Ferguson or Mr. Cornelius could not serve as co-trustee, Ms. Hadden would be appointed; if Ms. Hadden could not serve, Mr. Ferguson would be appointed. In Item III of the Second Codicil, Decedent specifically amended Item IV A of the Will. In this amendment, she removed Mr. Cornelius as co-trustee of the Trust and substituted Appellee Truxton Trust Company ("Truxton") as co-trustee with Mrs. Ferguson. Decedent did not amend Item VII C of the Will, which appointed successor co-trustees. In the Second Codicil, Decedent also removed Mr. Cornelius as co-executor and substituted Truxton to serve as co-executor of her Estate, along with Mr. Ferguson.

After Decedent's death, Truxton's and Mr. Ferguson's relationship quickly soured. As discussed further, *infra*, Mr. Ferguson was hostile and verbally abusive towards Truxton employees and other professionals working with him to administer Decedent's Estate. Mr. Ferguson emailed Truxton employees, cursing them and threatening litigation if Truxton did not comply with his demands. Despite being co-executor of the Estate, Mr. Ferguson refused to cooperate with Truxton in the administration of the Estate.[3]

Giving rise to the immediate appeal, on October 14, 2020, Mrs. Ferguson, Ms. Hadden, and Mr. Ferguson (together, the "Petitioners"), as qualified beneficiaries of the Trust, filed a petition to modify the Trust in the Seventh Circuit Court for Davidson County, Tennessee, Probate Division (the "trial court"). On November 25, 2020, the Petitioners

---

[1] Ms. Hadden and Mr. Ferguson are the children of Mrs. Ferguson.

[2] Ms. Hadden has one daughter, and Mr. Ferguson has three daughters.

[3] As mentioned in Truxton's appellate brief, by order of March 22, 2022, the trial court removed Mr. Ferguson as co-executor of the Estate. Mr. Ferguson filed a separate appeal of his removal, and that appeal is currently pending in this Court.

filed an amended petition to remove co-trustee. On December 9, 2020, the Petitioners filed a second amended petition to remove co-trustee (the "Second Amended Petition"), by which they sought Truxton's removal as co-trustee on the ground that Truxton had committed serious breaches of trust and fiduciary duty. The Petitioners sought Truxton's removal under Tennessee Code Annotated section 35-15-706(b)(1), (2), (3), and (4), discussed further *infra*. In the Second Amended Petition, the Petitioners requested an award of their court costs, litigation expenses, and reasonable attorney's fees. The Petitioners also requested that the trial court "order Truxton to repay any funds from the Trust that have been used in this litigation or that were disbursed without the approval of Janice Dinkins Ferguson, Co-Trustee, including, without limitation, all fees paid by Truxton to itself from the Trust." On January 11, 2021, Truxton filed its Answer to the Second Amended Petition, denying all alleged claims and requesting dismissal with prejudice.

On May 6, 2021, the trial court began the trial in this matter. Following testimony from Mrs. Ferguson, Ms. Hadden, and Mr. Ferguson, the Petitioners rested their case-in-chief, and the trial was adjourned until May 17, 2021. When the trial resumed, Truxton called two witnesses, Spence Dabbs and Derrick Jones, senior employees of Truxton. Although there was a court reporter present for the first day of trial, there was no court reporter present for the second day. Accordingly, the trial court approved a statement of the evidence for the second day of trial.[4]

By order of July 23, 2021, the trial court dismissed the Second Amended Petition with prejudice. In pertinent part, the trial court found that: (1) Mr. Ferguson repeatedly obstructed the efficient administration of Decedent's Estate and the Trust; (2) Mr. Ferguson repeatedly harassed and threatened Truxton's employees and other professionals involved in the administration of the Estate and the Trust; (3) there was no evidence that Truxton committed a breach of trust, failed to cooperate in the administration of the Trust, or that Truxton was unfit, unwilling, or persistently failed to administer the Trust in accordance with its terms; (4) Truxton performed admirably during difficult circumstances; (5) Truxton committed no acts of malfeasance, misfeasance, or non-feasance with respect to its administration of the Trust; (6) if Ms. Hadden was permitted to serve as co-trustee, Mr. Ferguson would "likely continue his pattern of controlling behavior and exert pressure on both Mrs. Ferguson and Ms. Hadden so as to eviscerate any semblance of independence on their part"; (7) it would violate a material purpose of the Trust to remove and replace Truxton with a related individual trustee; (8) Decedent intended that an independent co-trustee serve with Mrs. Ferguson; and (9) a corporate successor co-trustee should be appointed to replace Truxton. Mr. Ferguson is the only Petitioner to appeal.

---

[4] When a transcript of proceedings is unavailable, a statement of the evidence may be filed in its place. *See* Tenn. R. App. P. 24(c).

## II. Issues

Mr. Ferguson raises several issues, as stated in his brief:

1. Whether the Probate Court erred in construing the last will and testament of Katherine Dinkins Graham and a residuary trust, the Katherine D. Graham Trust (the "Trust"), created pursuant thereto when it ruled that the appointment of Truxton Trust Company ("Truxton") as a co-trustee was a material purpose of the Trust.

2. Whether the Probate Court abused its discretion by denying the petition to remove Truxton as a co-trustee of the Trust.

3. Whether the Probate Court abused its discretion when it refused to appoint Janice Ferguson Hadden to serve as successor co-trustee of the Trust, ignoring the clearly expressed intent of the settlor.

4. Whether the Probate Court abused its discretion when it refused to require Truxton to repay to the Trust the unauthorized fees that it has paid itself as co-trustee.

5. Whether the Probate Court abused its discretion when it refused to award the petitioners their attorneys' fees and costs.

As Appellee, Truxton raises one additional issue:

1. Whether the attorneys' fees and expenses incurred by Truxton in this appeal should be awarded against the Appellant and/or the Trust pursuant to Tenn. Code Ann. § 35-15-1004(a).

## III. Standard of Review

We review a non-jury case "*de novo* upon the record with a presumption of correctness as to the findings of fact, unless the preponderance of the evidence is otherwise." ***Bowden v. Ward***, 27 S.W.3d 913, 916 (Tenn. 2000) (citing Tenn. R. App. P. 13(d)). The trial court's conclusions of law are reviewed *de novo* and "are accorded no presumption of correctness." ***Brunswick Acceptance Co., LLC v. MEJ, LLC***, 292 S.W.3d 638, 642 (Tenn. 2008).

Furthermore, as we have noted many times, because "trial courts are able to observe witnesses as they testify and to assess their demeanor, . . . trial judges [are best suited] to evaluate witness credibility." ***Wells v. Tennessee Bd. of Regents***, 9 S.W.3d 779, 783 (Tenn. 1999) (citing ***State v. Pruett***, 788 S.W.2d 559, 561 (Tenn. 1990); ***Bowman v. Bowman***, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991)); *see also* ***Richards v. Liberty Mut. Ins. Co.***, 70 S.W.3d 729, 733 (Tenn. 2002) ("As this Court has repeatedly emphasized, a

reviewing court must give 'considerable deference' to the trial judge with regard to oral, in-court testimony as it is the trial judge who has viewed the witnesses and heard the testimony."). As such, "appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells*, 9 S.W.3d at 783 (internal citations omitted).

Moreover, while we are cognizant of the fact that Mr. Ferguson is representing himself in this appeal,[5] it is well-settled that "pro se litigants are held to the same procedural and substantive standards to which lawyers must adhere." *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 46 (Tenn. Ct. App. 2013). This Court has held that "[p]arties who choose to represent themselves are entitled to fair and equal treatment by the courts." *Hodges v. Tenn. Att'y Gen*., 43 S.W.3d 918, 920 (Tenn. Ct. App. 2000) (citing *Paehler v. Union Planters Nat'l Bank, Inc*., 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997)). Nevertheless, "courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003) (citing *Edmundson v. Pratt*, 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996); *Kaylor v. Bradley*, 912 S.W.2d 728, 733 n.4 (Tenn. Ct. App. 1995)). With the foregoing in mind, we turn to address the substantive issues.

## IV. Analysis

### A. Removal of Truxton

Mr. Ferguson argues that the trial court erred when it declined to remove Truxton and substitute Ms. Hadden as co-trustee. Tennessee Code Annotated section 35-15-706(b) provides four enumerated factors under which a court *may* remove a trustee. Tenn. Code Ann. § 35-15-706(b) ("The court *may* remove a trustee if . . . .") (emphasis added). As this Court has explained, "may" is a permissive term that is "generally regarded as directory or discretionary." *In re Estate of Edmonds*, No. W2018-01783-COA-R3-CV, 2019 WL 2304053, at *6 (Tenn. Ct. App. May 30, 2019) (quoting *Baker v. Seal*, 694 S.W.2d 948, 951 (Tenn. Ct. App. 1984)). "Given the permissive language used in [section 35-15-706], it appears that the trial court retains discretion with regard to its removal decisions." *In re Estate of Edmonds*, 2019 WL 2304053, at *6. Accordingly, we review the trial court's decision not to remove Truxton as co-trustee under an abuse of discretion standard. "'An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice.'" *C.W.H. v. L.A.S.*, 538 S.W.3d 488, 495 (Tenn. 2017) (quoting *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013)). Because the Petitioners alleged that Truxton's removal was permitted under all four factors, we address each in turn below.

---

[5] Although *pro se*, at oral argument, Mr. Ferguson explained that he is a retired attorney. We also note that the Petitioners were represented by counsel at trial.

**1. Section 35-15-706(b)(1)-(3)**

Under the first three factors, a court may remove a trustee if:

(1) The trustee has committed a serious breach of trust;

(2) Lack of cooperation among co-trustees substantially impairs the administration of the trust;

(3) Because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the interests of the beneficiaries;

Tenn. Code Ann. § 35-15-706(b)(1)-(3). Concerning these provisions, the trial court found:

12. The Petitioners have presented no evidence to show that Truxton has committed any breach of trust, has failed to cooperate in the administration of the Trust, or that Truxton is unfit, unwilling, or has persistently failed to administer the Trust in accordance with its terms. To the contrary, the evidence presented demonstrates that Truxton has worked diligently to fulfill its fiduciary duties in the midst of a difficult situation brought about by Mr. Ferguson, and given the circumstances, Truxton has performed admirably.

13. The Court expressly finds that Truxton has committed no acts of malfeasance, misfeasance, or non-feasance with respect to its administration of the Trust.

On appeal, Mr. Ferguson alleges that Truxton: (1) acted "a number of times and in a number of respects without seeking or obtaining the agreement of" Mrs. Ferguson; (2) "unilaterally and without the knowledge of [Mrs. Ferguson] establish[ed] an account for the Trust with itself under its sole control"; (3) transferred assets of the Estate into the Trust account; (4) paid itself fees as co-trustee;[6] (5) failed to cooperate with Mrs. Ferguson; and (6) persistently failed to administer the Trust effectively. We note that Mr. Ferguson makes these allegations in his appellate brief without providing citations to the record to support them.[7] *See* Tenn. R. App. P. 27(a)(7)(A) (providing that an appellant's brief *shall* contain

---

[6] We address Truxton's fees, *infra* at IV B.
[7] Mr. Ferguson's "argument" regarding Tennessee Code Annotated section 35-15-706(b)(3) not only fails to provide record citations but also fails to make any substantive argument. Mr. Ferguson's entire discussion in this portion of his brief is:

an argument setting forth, in pertinent part, the contentions of the appellant with respect to the issues presented and "appropriate references to the record").

From our review, the record does not support Mr. Ferguson's allegations. Indeed, the Petitioners failed to present any evidence that Truxton committed a serious breach of trust, that a lack of cooperation between Mrs. Ferguson and Truxton substantially impaired the administration of the Trust, or that Truxton was unfit, unwilling, or persistently failed to administer the Trust effectively such that Truxton's removal best served the interests of the beneficiaries. Tenn. Code Ann. § 35-15-706(b)(1)-(3). To the contrary, the record shows that, although the Petitioners did not want Truxton to serve as co-trustee, Truxton fulfilled its fiduciary duties and administered the Trust effectively, despite a lack of communication from Mrs. Ferguson and abusive communications from Mr. Ferguson, discussed further *infra*.

Turning to the record, Mr. Dabbs, a licensed attorney who helped administer the Trust, testified concerning the Trust's formation, administration, and Truxton's communications with Mrs. Ferguson regarding same. The record shows that, on July 26, 2020, Mr. Ferguson, as co-executor of the Estate, emailed Mr. Dabbs stating, in pertinent part, that, as executors of the Estate, they should transfer the remaining cash and all non-cash assets of the Estate to the Trust before July 31, 2020.[8] Although Mrs. Ferguson testified that she "was not informed that this [T]rust was being funded," Mr. Dabbs testified that he called Mrs. Ferguson on July 31, 2020 to inform her of the partial funding. Mr. Dabbs further testified that Mrs. Ferguson did not object to the funding, and that she thanked Truxton for its work. Given the trial court's finding that Truxton "committed no acts of malfeasance, misfeasance, or non-feasance with respect to its administration of the Trust," it is apparent from the final order that the trial court implicitly credited Mr. Dabbs' testimony over that of Mrs. Ferguson. *See Magness v. Couser*, No. M2019-01138-COA-R3-CV, 2020 WL 1983797, at *3 (Tenn. Ct. App. Apr. 27, 2020) (quoting *Williams v. City of Burns*, 465 S.W.3d 96, 120 (Tenn. 2015)) ("This Court is 'required to defer to the trial court's credibility findings, including those that are implicit in its holdings.'"); *see also Wells*, 9 S.W.3d at 783 (stating that "appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary").

TUTC Section 35-15-706(b)(3) provides for the removal of a trustee who persistently fails to administer the trust effectively. In the case at bar, Truxton's persistent failure to administer the Trust to best serve the interests of the beneficiaries is grounds for its removal under TUTC Section 35-15-706(b)(3).

Such a "skeletal argument" could result in Mr. Ferguson's waiver of this issue. *Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived."). However, for completeness, we review, *infra*, whether the trial abused its discretion when it declined to remove Truxton under Tennessee Code Annotated section 35-15-706(b)(3).

[8] This email was entered into evidence as trial exhibit number 5.

There is nothing in the record that would lead us to disturb the trial court's credibility finding.

Concerning the Trust's administration, Mr. Dabbs testified that Truxton sent Mrs. Ferguson monthly statements of the Trust's assets and activities. In her testimony, Mrs. Ferguson acknowledged receipt of the monthly statements and conceded that she reviewed the statements each month. Mr. Jones, the Senior Managing Director for Truxton and Truxton's Chief Fiduciary Officer, testified that Mrs. Ferguson never responded to these monthly updates. Similarly, Mr. Dabbs testified that he could not recall any instance where Mrs. Ferguson questioned or complained of the activities undertaken by Truxton as co-trustee, although he noted instances where Truxton attempted to contact Mrs. Ferguson and received no response from her. In her testimony, Mrs. Ferguson admitted that there were occasions where she "did not acknowledge [Truxton's] communication because [she] did not agree with it." However, Mrs. Ferguson also testified that she never complained to any representative of Truxton concerning the manner in which Truxton administered or invested Trust assets.[9] Regardless, despite Mrs. Ferguson's testimony, the record shows that, since the Trust's partial funding in July 2020, Truxton's investment decisions have resulted in approximately a $200,000.00 net gain to the Trust's assets. Such results do not evidence malfeasance, misfeasance, or non-feasance on Truxton's part.

Finally, Mr. Dabbs testified that: (1) Truxton had not engaged in any actions that would rise to the level of a breach of trust in its administration of the Trust; (2) Truxton had acted at all times in good faith and for the benefit of the Trust; and (3) Mr. Dabbs and his colleagues had cooperated and attempted to work with both Mr. Ferguson, as co-executor of the Estate, and Mrs. Ferguson, as co-trustee, of the Trust. Similarly, Mr. Jones testified that, in his opinion, Truxton's actions in no way rose to the level of "serious breach of trust." In view of the trial court's credibility finding, and from the entire record, the evidence does not preponderate against the trial court's substantive finding that Truxton committed no acts of malfeasance, misfeasance, or non-feasance. Accordingly, we affirm the trial court's conclusion that Truxton's removal was not warranted under Tennessee Code Annotated section 35-15-706(b)(1)-(3).

## 2. Section 35-15-706(b)(4)

Turning to the final factor, a court may remove a trustee if:

(4) There has been a substantial change of circumstances or removal is

---

[9] We note that Mrs. Ferguson testified that she wrote a letter to "Mr. Stumb," the Chairman of Truxton's Board of Directors, and, although she did not "specifically register a complaint," she asked Truxton to resign because she "felt that [her] best interests were not being served." Mrs. Ferguson testified that she wrote this letter *prior* to the Trust's funding. It is perplexing to this Court why Mrs. Ferguson's believed her best interests were not being served when the Trust had yet to be funded. Regardless, the letter was not presented as evidence to the trial court and is not part of the appellate record.

requested by all of the qualified beneficiaries, the court finds that removal of the trustee best serves the interests of all of the beneficiaries and is not inconsistent with a material purpose of the trust, and a suitable co-trustee or successor trustee is available.

Tenn. Code Ann. § 35-15-706(b)(4). As the Tennessee Supreme Court has explained, when construing a statute, "[o]ur analysis naturally begins with the words used in the statute," *Womack v. Corr. Corp. of Am.*, 448 S.W.3d 362, 366 (Tenn. 2014) (citing *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 420 (Tenn. 2013)), and we must interpret those words under their "natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Id.* (quoting *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012)). Given the Tennessee Legislature's use of the conjunctive, "and," under the plain language of the statute, the trial court had the *discretion*, but was not required, to remove Truxton if all of the qualified beneficiaries requested Truxton's removal *and* the trial court found *each* of the following: (1) that Truxton's removal best served the interests of all of the beneficiaries; (2) that Truxton's removal was not inconsistent with a material purpose of the trust; *and* (3) that a suitable successor co-trustee was available. Tenn. Code Ann. § 35-15-706(b)(4). It is undisputed that all of the qualified beneficiaries requested Truxton's removal. Accordingly, we review the remaining elements below.

We begin our review with the trial court's finding that Truxton's removal as co-trustee and the appointment of a related individual co-trustee would violate a material purpose of the Trust. In making this finding, the trial court reasoned:

> 20. The provisions of the Decedent's Will and Second Codicil demonstrate that the Decedent intended that an independent co-trustee would serve with Mrs. Ferguson. The Decedent could have appointed Mr. Ferguson or Ms. Hadden to serve with their mother as a co-trustee, but twice she declined to do so, first in her original Will when she appointed an independent attorney, Charles G. Cornelius, to serve with Mrs. Ferguson, and then again in her Second Codicil, in which she appointed Truxton to serve as a co-trustee with Mrs. Ferguson in place of Mr. Cornelius.

We do not interpret such a material purpose from the plain language of Decedent's Will and Second Codicil. As discussed, *supra*, in Item IV A of the Will, Decedent appointed Mrs. Ferguson and Mr. Cornelius as co-trustees of the Trust. Item VII C of the Will named successor co-trustees in the event Mrs. Ferguson *or* Mr. Cornelius could not serve. Specifically, Item VII C stated:

> In the event that my sister [Mrs. Ferguson] or CHARLES G. CORNELIUS shall at any time be unable to serve as a Co-Trustee, then I appoint my niece, JANICE FERGUSON HADDEN, as a Co-Trustee, without bond. If for any

reason JANICE FERGUSON HADDEN is unable to serve as a Co-Trustee of any Trust at any time, then I appoint JOHN THOMAS FERGUSON, as substitute Co-Trustee, also without bond. In any other cases where a substitute Co-Trustee is needed, I direct that the existing Co-Trustee shall seek a qualified replacement Co-Trustee and obtain the approval of a Court of competent jurisdiction for such replacement. I waive bond for all substitute and successor Trustees or Co-Trustees.

Importantly, when Decedent changed portions of her Will by way of the Second Codicil, she declined to delete or change Item VII C, discussed above. Concerning the Trust, the only provision Decedent altered in the Second Codicil was Item IV A, wherein she removed Mr. Cornelius as a co-trustee and substituted Truxton in his place. On this Court's reading, with Truxton's substitution for Mr. Cornelius in Item VII C, the Will then read: "In the event that my sister or [Truxton] shall at any time be unable to serve as a Co-Trustee, then I appoint my niece, Janice Ferguson Hadden, as a Co-Trustee[.]" Truxton appears to agree with our interpretation. At oral argument, when asked "If Truxton couldn't serve, does it name a successor trustee?" Truxton's attorney responded, "That's where Ms. Hadden comes in. So, Ms. Hadden is specifically named in the instrument to serve as a successor if for some reason Truxton . . . is unable to serve further as co-trustee." By Truxton's own admission, Ms. Hadden was named to serve as a successor trustee if *either* a related co-trustee, i.e., Mrs. Ferguson, *or* an independent co-trustee, i.e., Truxton, could not serve. Indeed, it appears that Decedent intended for Ms. Hadden to serve as successor co-trustee, regardless of whether she replaced a related or independent co-trustee. As such, it was not a material purpose of the Trust that one co-trustee be an independent third-party, and the trial court's conclusion otherwise was error. *See* Tenn. Code Ann. § 35-15-706(b)(4).

Our conclusion concerning the trial court's material purpose finding is not dispositive of the issue before us. As discussed, *supra*, a court must find *all three* elements in (b)(4) before it has the *discretion* to remove a trustee under this section. We recall the remaining elements: (1) that Truxton's removal would best serve the interests of all of the beneficiaries; and (2) that a suitable successor co-trustee was available. Tenn. Code Ann. § 35-15-706(b)(4). We consider these remaining elements together.

As an initial matter, we note that, in the Second Amended Petition, the Petitioners did not specifically request that Ms. Hadden replace Truxton as co-trustee. However, in reviewing the transcript of the evidence from the first day of trial as well as Mr. Ferguson's appellate brief, it appears that this was the Petitioners' intent. It is clear that the trial court was concerned with Mr. Ferguson's influence over Ms. Hadden should the trial court appoint her co-trustee. In its final order, the trial court specifically noted that it had "an opportunity to observe [the Petitioners'] respective personalities and demeanors." Based on these observations, as well as the evidence concerning Mr. Ferguson's past interactions with Truxton, the trial court opined that, "if Ms. Hadden were permitted to serve as a co-

trustee of the Trust with Mrs. Ferguson, Mr. Ferguson would most likely continue his pattern of controlling behavior and exert pressure on both Mrs. Ferguson and Ms. Hadden so as to eviscerate any semblance of independence on their part." Implicit in this finding is the trial court's conclusion that Truxton's removal, and Ms. Hadden's appointment, would not best serve the interests of all of the beneficiaries; consequently, the trial court also implicitly concluded that Ms. Hadden was not a suitable successor co-trustee. *See* Tenn. Code Ann. § 35-15-706(b)(4); **Hollingsworth v. Hollingsworth**, No. 02A01-9103-CV-00043, 1991 WL 220613, at \*2 (Tenn. Ct. App. Oct. 31, 1991) (holding that certain findings of fact are implicit in the trial court's rulings and are to be reviewed with a presumption of correctness). As discussed, *supra*, this Court gives trial courts "considerable deference" concerning in-court testimony, where it is the trial judge who has observed witnesses as they testify and has assessed their demeanor. *See* **Wells**, 9 S.W.3d at 783 (citing **Pruett**, 788 S.W.2d at 561; **Bowman**, 836 S.W.2d at 566); *see also* **Richards**, 70 S.W.3d at 733. This Court "will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." **Wells**, 9 S.W.3d at 783 (internal citations omitted).

Here, there is evidence to support the trial court's concern regarding Mr. Ferguson's pattern of controlling and obstructive behavior. As discussed, *supra*, the record includes multiple emails from Mr. Ferguson to Truxton employees and to a real estate agent who was engaged to help sell real property belonging to the Estate. In these emails, Mr. Ferguson is condescending, harassing, and controlling. For example, in one June 29, 2020 email to Truxton employees concerning the sale of real property, Mr. Ferguson wrote, in part:

> I will update you on the repairs when practically possible. Please do not interfere in the work that is being done to get the sale closed. If you need some more chardonnay or some more legos to build models with your kids, let me know.

On review of the other emails surrounding this exchange, it is clear that Truxton employees were working diligently with the real estate agent to timely close the sale, but it was Mr. Ferguson who was disruptive and uncooperative. Nevertheless, Mr. Ferguson instructed Truxton, co-executor of the Estate, not to interfere in the sale, exemplifying his need to dominate and control those around him. This is merely one example of Mr. Ferguson's problematic behavior; several other emails Mr. Ferguson sent contain expletives that we will not repeat here.

Unfortunately, it appears that Mr. Ferguson directed his ire at both related and unrelated parties. Mr. Jones testified concerning a conversation he had with Ms. Hadden during the process of selling Decedent's condominium. Mr. Jones testified that Mr. Ferguson loudly berated both his mother and his sister to the point that the real estate agent left the condominium because she was uncomfortable with the situation. Mr. Jones

testified that the interaction was so distressing he felt the need to follow up with Ms. Hadden to ensure that she was okay. Mr. Jones also testified to a conversation he had with Mrs. Ferguson wherein Mrs. Ferguson wished Truxton "good luck" in dealing with Mr. Ferguson because they were "going to need it." In her testimony, Ms. Hadden acknowledged that her brother is "hardheaded." Based on our review, Mr. Ferguson's behavior exemplified in the record is abusive and controlling. The evidence preponderates in favor of the trial court's concern that, should Truxton be removed and Ms. Hadden substituted as co-trustee, Mr. Ferguson would likely exert pressure on both Ms. Hadden and Mrs. Ferguson to meet his demands, thus dismantling the required independence or impartiality of the co-trustees. *See* Tenn. Code Ann. § 35-15-803 ("If a trust has two (2) or more beneficiaries, the trustee shall act impartially in investing, managing, and distributing the trust property, giving due regard to the beneficiaries' respective interests."). Even more troubling is the evidence in the record showing that Mr. Ferguson has a history of making poor financial decisions, that he has made certain self-serving financial decisions, and that he has not always been honest or transparent concerning financial matters related to the Estate's administration. In short, Truxton's removal and Ms. Hadden's appointment would likely lead to Mr. Ferguson's improper administration of the Trust, which would best serve the interest of only one beneficiary, Mr. Ferguson. Tenn. Code Ann. § 35-15-706(b)(4).

Given the "particular family dynamics involved in this case," the trial court found that the only suitable successor co-trustee would be an unrelated corporate trustee. Based on the record and for the reasons discussed above we agree. The trial court held that it would remove Truxton under Tennessee Code Annotated section 35-15-706(b)(4) if the Petitioners first identified "a suitable Tennessee corporate fiduciary to serve with Mrs. Ferguson as a successor co-trustee of the Trust[.]" The Petitioners declined to seek an alternate corporate co-trustee, and instead appealed the trial court's decision not to appoint Ms. Hadden. For the many reasons discussed, *supra*, we cannot conclude that the trial court abused its discretion in declining to remove Truxton and appoint Ms. Hadden co-trustee of the Trust under Tennessee Code Annotated section 35-15-706(b)(4).

## B. Truxton's Fees as Co-Trustee

Mr. Ferguson next argues that the trial court abused its discretion when it denied the Petitioners' request that Truxton repay to the Trust all of the fees that it previously paid itself as co-trustee. The trial court's denial of such request is implicit in its findings that Truxton "has worked diligently to fulfill its fiduciary duties" and has "committed no acts of malfeasance, misfeasance, or non-feasance with respect to its administration of the Trust." In short, the trial court implicitly found that Truxton was entitled to the fees it paid itself for the work performed as co-trustee. Having affirmed the trial court's holding that Truxton administered the Trust diligently and in keeping with its fiduciary duties, we agree that Truxton was due compensation for its services.

The terms of the Trust did not specify an amount for the co-trustees' compensation. Rather, Item VII A of the Will provided:

> My Trustees shall pay all expenses of the Trust[] including legal compensation to themselves and shall render annual reports of income, expenses, and investments to those persons entitled to the income therefrom.

Tennessee Code Annotated section 35-15-708(a) provides that, "[i]f the terms of a trust do not specify a trustee's . . . compensation, and if the settlor, if living, or otherwise a majority of the qualified beneficiaries . . . have not otherwise agreed, a trustee . . . is entitled to compensation that is reasonable under the circumstances." Tenn. Code Ann. § 35-15-708(a). There is no evidence to show that the beneficiaries agreed to a specific amount of compensation for Truxton and informed Truxton of that amount. Tenn. Code Ann. § 35-15-708(a). Accordingly, Truxton was entitled to "compensation that [was] reasonable under the circumstances." Tenn. Code Ann. § 35-15-708(a). The only evidence concerning Truxton's fees is Mr. Ferguson's testimony that Truxton paid itself around $2,000.00 per month. In his appellate brief, Mr. Ferguson asserts that Truxton paid itself approximately $70,000.00 by the time of trial. There is no document in the record showing the fee schedule for Truxton's administration of the Trust, and it does not appear from the statement of the evidence that either of the Truxton employees testified to a specific amount of fees. Although each of the Petitioners testified that Truxton's fees were unreasonable, they presented no evidence, other than their opinions, as to why Truxton's fees were unreasonable. Mr. Ferguson testified, and he alleges in his appellate brief, that Truxton's fees were higher than Truist's or UBS' fees, but there is no evidence in the record concerning Truist's or UBS' fee schedules. Mr. Jones testified that Truxton's fees have remained the same since Decedent first opened her account with Truxton in 2004, and that, prior to moving her account to Truxton, Decedent paid higher fees at SunTrust.[10] We deduce from this testimony that Decedent was likely aware of—and consented to—Truxton's fees when she chose it to serve as co-trustee. Further, Mr. Jones testified that Truxton recently conducted a market survey for its trust services and found that its fees for investment and trustee services were in the middle third of its competitors. Given the foregoing, it does not appear that Truxton's fees, whatever the specific amount, were unreasonable. Accordingly, we affirm the trial court's denial of the Petitioners' request that Truxton reimburse to the Trust the amounts it paid itself as co-trustee.

---

[10] We note that, in December 2019, SunTrust merged with BB&T to form Truist Bank. *See* Kevin Payne & Mitch Strohm, SunTrust Bank, Now Truist, Review, FORBES (Nov. 11, 2021, 10:13 AM), https://www.forbes.com/advisor/banking/suntrust-bank-now-truist-review/.

## C. Attorneys' Fees

### 1. The Petitioners' Fees at Trial

Mr. Ferguson's final argument is that the trial court abused its discretion when it refused to award the Petitioners their attorney's fees and costs. In its final order, the trial court stated:

> With respect to attorneys' fees, the parties may file motions in accordance with the local rules and applicable law requesting that such fees be charged to the Trust. Any such motions will be reviewed in accordance with the local rules and other applicable law.

On review of the record, it appears that the Petitioners failed to file a motion requesting attorney's fees and costs, and Mr. Ferguson does not reference any such motion in his appellate brief. Rather, he simply argues that the trial court abused its discretion when it "refuse[d] to award attorneys' fees and costs to the Petitioners." Because Mr. Ferguson failed to raise this issue with the trial court, it is waived on appeal. *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983) ("It has long been the general rule that questions not raised in the trial court will not be entertained on appeal. . . .").

### 2. Truxton's Fees on Appeal

As Appellee, Truxton asks this Court to award it attorney's fees and expenses incurred in defending this appeal. In Tennessee, "litigants are responsible for their own attorney's fees absent a statute or agreement between the parties providing otherwise." *Darvarmanesh v. Gharacholou*, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at *16 (Tenn. Ct. App. July 19, 2005) (citing *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000)). Truxton asks that we award it attorney's fees under Tennessee Code Annotated section 35-15-1004(a), which provides:

> In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy.

Tenn. Code Ann. § 35-15-1004(a). An award of appellate attorney's fees under this section lies within this Court's discretion. *In re Estate of Goza*, 397 S.W.3d 564, 571 (Tenn. Ct. App. 2012) (citing *Fickle v. Fickle*, 287 S.W.3d 723, 737 (Tenn. Ct. App. 2008)). In our discretion, we decline to award Truxton its attorney's fees on appeal.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's final order. The case is remanded for such further proceedings as are necessary and consistent with this opinion. Costs of the appeal are assessed to the Appellant, John Thomas Ferguson, for all of which execution may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE
